1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL E. ALCANTER,

11            Plaintiff,                    No. CIV S-05-1655 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15            Defendant.                    ORDER

16   _____/

17            The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Disability Income

20   Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed

21   below, the court will deny Plaintiff's motion for summary judgment, deny the Commissioner's

22   cross-motion for summary judgment, and remand this matter for further proceedings consistent

23   with this order.

24   /////

25   /////

26   /////

1

1    I.  Factual and Procedural Background

2           In a decision dated April 11, 2005,  the ALJ determined Plaintiff was not

3    disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals

4    Council denied Plaintiff's request for review.  The ALJ found that the medical evidence did not

5    support finding that Plaintiff had a medically determinable severe impairment; Plaintiff's

6    subjective allegations of disability were not supported by any compelling clinical evidence;

7    Plaintiff did not have any impairments that, either singly or in combination, significantly limit his

8    ability to perform basic work-related activities prior to December 31, 2002, the date Plaintiff last

9    /////

10   _____

11          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12   to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
     is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13   medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) &
     1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14   §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
     following summarizes the sequential evaluation:
15
                   Step one:  Is the claimant engaging in substantial gainful
16        activity?  If so, the claimant is found not disabled.  If not, proceed
          to step two.
17                 Step two:  Does the claimant have a "severe" impairment?
          If so, proceed to step three.  If not, then a finding of not disabled is
18        appropriate.
                   Step three:  Does the claimant's impairment or combination
19        of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
          404, Subpt. P, App.1?  If so, the claimant is automatically
20        determined disabled.  If not, proceed to step four.
                   Step four:  Is the claimant capable of performing his past
21        work?  If so, the claimant is not disabled.  If not, proceed to step
          five.
22                 Step five:  Does the claimant have the residual functional
          capacity to perform any other work?  If so, the claimant is not
23        disabled.  If not, the claimant is disabled.  _____

24   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26   evaluation process proceeds to step five.  Id.

1    met the special insured status requirements of the Act; and Plaintiff was not disabled.

2    Administrative Transcript ("AT") 17-18.

3            Plaintiff contends that the ALJ committed numerous errors.  First, Plaintiff argues

4    that the ALJ erred in his determination that Plaintiff did not have a severe impairment prior to the

5    date he was last insured for benefits.  Second, Plaintiff contends that the ALJ erred by failing to

6    employ a medical expert to determine the onset date of disability.  Finally, Plaintiff states that the

7    ALJ's rejection of Plaintiff's subjective complaints was in error.

8    II.  Standard of Review

9            The court reviews the Commissioner's decision to determine whether (1) it is

10   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

11   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

12   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

13   Substantial evidence means more than a mere scintilla of evidence, but less than a

14   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

15   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

16   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

17   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

18   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

19   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

20   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

21   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

22   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

23   substantial evidence supports the administrative findings, or if there is conflicting evidence

24   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

25   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

26   /////

1  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

2  1335, 1338 (9th Cir. 1988).

3  III.  Analysis

4       a.  The ALJ's Finding That Plaintiff Did Not Have a Severe Impairment Prior to

5  the Date He Was Last Insured Was in Error.[2]

6       The ALJ found that Plaintiff did not have a severe impairment prior to December

7  31, 2002, the last date upon which Plaintiff qualified for DIB under Title II of the Act.  In

8  reaching this conclusion, the ALJ noted the lack of objective medical evidence documenting any

9  severe impairment prior to the expiration of Plaintiff's insured status.  AT 15.  Absent objective

10 medical evidence, the ALJ refused to rely solely upon Plaintiff's subjective complaints.  AT 16.

11 This finding was in error.

12       Plaintiff bears the burden of proving that he is impaired.  See Johnson v. Shalala,

13 60 F.3d 1428, 1432 (9th Cir. 1995).  Impairment must be shown prior to the date Plaintiff was

14 last insured under Title II of the Act.  42 U.S.C. § 423(a).  Under the Act, a claimant is disabled

15 when they are "unable to engage in any substantial gainful activity by reason of any medically

16 determinable physical or mental impairment which...can be expected to last for a continuous

17 period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

18       A severe impairment must be "medically determinable."  20 C.F.R. §

19 416.920(a)(4)(ii).  A severe physical impairment must be established by medical evidence

20 consisting of signs, symptoms, or laboratory findings, not merely statements about symptoms.  20

21 C.F.R. § 416.908.  An impairment is "not severe" only if it "would have no more than a minimal

22 effect on an individual's ability to work, even if the individual's age, education, or work

23 experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify

24

25       [2]Plaintiff raises two separate arguments in her brief on this point.  First, Plaintiff alleges
that the ALJ's finding that Plaintiff did not suffer from a severe impairment was in error.
Second, Plaintiff contends that the ALJ erred in determining of the onset date of disability.  As
26 the analysis of these issues is inextricably linked, the Court addresses them both in this section.

4

claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996);  see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

There is little medical evidence in this case.  The ALJ documented medical treatment received for a back injury by Plaintiff in 1988.  AT 13-14.  As described by the ALJ, the evidence in the record shows that Plaintiff was not seen again by a doctor until 15 years later, when he was evaluated by a consultative examiner on August 29, 2003, for purposes of assessing his claim for benefits under Titles II and XVI of the Act.

Plaintiff suffered a back injury sometime prior to 1980 that eventually required treatment in 1988.[3]  On January 20, 1988, Plaintiff underwent surgery by Dr. Llaguno at Kaiser Permanente (Kaiser) to repair a herniated disc and compressed spinal cord.  AT 103.  Several days later, Plaintiff underwent emergency surgery to remove ossified ligaments and relieve pressure on the spinal cord.  AT 99-100, 101-02.

Following surgery, Plaintiff continued to complain of low back pain, although doctors reported consistent improvement.  AT 93, 94, 95.  On Plaintiff's final examination on July 20, 1988, he complained of low back pain.  AT 92.  While a CT scan showed some evidence of herniation, the physician treating him reported that a myelogram showed no evidence of root cut off.  Id.  According to the doctor, Plaintiff appeared fine and would return to work in two months.  Id.  On October 17, 1988, Kaiser retired Plaintiff's file.  AT 91.

Plaintiff reported undergoing neck surgery in 1994.  AT 122.  However, Plaintiff did not mention this procedure during the administrative hearing and there are no medical

---

[3]Plaintiff reported to the consultative examiner that he suffered his back injury in 1976. AT 122.  He told his doctor at Kaiser that he injured the back in 1972.  AT 107.  However, during the administrative hearing, Plaintiff stated that he "broke [his] back in '80...'71."  AT 156.

1  records to support this statement.  The sole evidence of such a procedure is a scar on Plaintiff's

2  neck.  AT 126.

3          The record contains no evidence of any additional treatment or examination by

4  any physician until a consultative examination on August 29, 2003.  AT 122.  The examining

5  physician, Dr. Borges, diagnosed Plaintiff with cervical lumbar pain that was likely secondary to

6  arthritis, mild cervical spinal tenderness and mild joint tenderness with decreased range of

7  motion in the back, and knee pain.  AT 126.  Consequently, Dr. Borges found Plaintiff had some

8  mild functional limitations preventing him from driving longer than one hour at a time and no

9  more than four hours in any one day; and that permitted only occasional bending, squatting, or

10 stooping; lifting, carrying, pushing or pulling of no more than 25 pounds; and sitting, standing, or

11 walking for no more than two hours at a time with customary breaks in an eight-hour day.  Id.

12         Plaintiff underwent an x-ray on January 21, 2004.  AT 129.  This x-ray revealed

13 calcification in two areas of the cervical spine as well as slight dextroscoliosis.  Id.  Otherwise,

14 the image was unremarkable.  Id.

15         On January 30, 2004, in light of the evidence of disability in the record, the

16 Commissioner granted Plaintiff's request for benefits under Title XVI of the Act.  Subsequently,

17 Plaintiff began receiving medical care from the State.  On April 2, 2004, nonexamining doctors

18 with the State Agency reconsidered Plaintiff's file.  AT 146.  Doctors noted that Plaintiff had

19 been diagnosed with high blood pressure, while continuing to complain of left arm pain and back

20 pain.  Id.  Based upon the evidence in the file, doctors determined that there was insufficient

21 evidence to find Plaintiff disabled prior to December 31, 2002, his date last insured.  Id.

22         As a result of the lack of treatment and the ALJ's assessment of Plaintiff's

23 credibility, the ALJ determined that Plaintiff was not disabled prior to December 31, 2002, his

24 date last insured under Title II of the Act.  This finding was in error.  While Plaintiff bears the

25 ultimate burden of establishing on an onset date, the ALJ must ensure the record is adequate to

26 /////

6

1 permit a proper adjudication of Plaintiff's claim.  Johnson, 160 F.3d at 590.  The ALJ failed to

2 meet his duty in this case.

3        Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841,

4 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996)(holding that the

5 ALJ has duty to develop the record even when claimant is represented).  Evidence raising an

6 issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some

7 objective evidence suggesting a condition which could have a material impact on the disability

8 decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of

9 Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . .

10 triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d

11 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

12        If the evidence of disability is insufficient or inconsistent, the ALJ is obligated to

13 continue the investigation.  20 C.F.R. § 416.927(c)(3).  Obtaining a complete medical record is

14 critical to evaluating a claimant's residual functional capacity.  20 C.F.R. § 416.945(a)(3).  The

15 ALJ must fully develop the medical record.  See Crane, 76 F.3d at 255.  It is apparent that he has

16 not done so in this case.

17        The ALJ did not follow Social Security Ruling 83-20 in determining the onset

18 date of disability.  See Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984)(holding that Social

19 Security Rulings are "binding on all components of the Social Security Administration"); cf.

20 Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security

21 Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

22 According to SSR 83-20, the ALJ "should" call on the services of a medical advisor when the

23 onset date of disability must be determined and that date is not otherwise clear from the record.

24 Despite its conditional language, SSR 83-20 requires the ALJ to employ a medical expert in

25 order to determine the onset date of disability, rather than inferring a date that would result in a

26 /////

1   denial of benefits.  Armstrong v. Comm'r of Social Security, 160 F.3d 587, 589-90 (9th Cir.

2   1998); Morgan v. Sullivan, 945 F.2d 1079, 1082-83(9th Cir. 1991).

3          The ALJ did not meet this judicially imposed requirement.  There is significant

4   ambiguous evidence of the onset date of Plaintiff's disability.  The ALJ's failure to acquire the

5   additional evidence needed to clarify this essential point was in error.

6          In support of his claim, Plaintiff stated that he suffered from a disabling

7   impairment prior to December 31, 2002.  Plaintiff testified to increasingly severe pain following

8   his back surgery in 1988 that eventually forced him to leave the workforce in 1997.  AT 151.

9   Plaintiff's work history confirms this testimony.  AT 49-50.

10          The ALJ discounted Plaintiff's subjective complaints and did not find any

11   ambiguity in the evidence.  As discussed below, this finding was in error.  The ALJ applied an

12   improper legal standard when he evaluated Plaintiff's lack of treatment.  Furthermore, substantial

13   evidence does not support the ALJ's conclusion that Plaintiff's daily activities are inconsistent

14   with disabling pain prior to December 31, 2002.

15          Plaintiff's testimony regarding his onset date was contradicted by an opinion from

16   State Agency medical experts.  AT 146.  While this opinion might satisfy the requirements of

17   SSR 83-20, the ALJ's reliance upon it is not apparent in his findings.  The ALJ provided no

18   analysis of the State Agency conclusions.  Rather, he simply states that it is consistent with his

19   findings.  AT 16.  Such a remark made after the ALJ has reached his conclusion regarding

20   Plaintiff's onset date does not appear to satisfy the ALJ's duty of fairly evaluating all of the

21   evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

22          Aside from Plaintiff's testimony and the State Agency statement, the record

23   contains no evidence from accepted medical sources, other sources, or third parties as to the

24   onset date of Plaintiff's impairment.  Accepted medical sources are licensed physicians.  20

25   C.F.R. § 404.1513(a).  Other such sources include health care providers such as nurse

26   practitioners or chiropractors who can provide evidence of impairment that the ALJ may consider

8

in reaching his decision.  20 C.F.R. § 404.1513(d)(1).  There is a similar lack of any third-party testimony from other licensed professionals, family, friends, coworkers, or former employers to document any impaired ability to work.  Id. at (2)-(4); see Johnson, 160 F.3d at 590 ("The record also shows that [the claimant] has for the last 30 years experienced deteriorating health problems."); see also Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)(finding substantial evidence of injury prior to onset date when record contained testimony from the claimant, four lay witnesses, and three physicians who saw the claimant after the onset date).

Plaintiff identified his daughter and spouse as third-party sources of information about his impairment, AT 73, 83; however, the ALJ made no attempt to acquire information from them.  Plaintiff's work history was available for review; yet, the ALJ made no apparent attempt to contact either of Plaintiff's former employers.  Furthermore, there is no evaluation by the ALJ in his findings of the significant decrease in Plaintiff's earnings in 1997 that could be consistent with someone who is no longer able to work because of disabling pain.  AT 49-50.  Without information from some medical or other source to resolve the inconsistency between Plaintiff's claims and the State Agency opinion, it cannot be said that the ALJ's finding that Plaintiff's was not disabled prior to December 31, 2002, is supported by substantial evidence in the record.

The record contains ample evidence of impairment for the period after Plaintiff's insured status expired.  Indeed, it is upon this basis that the Commissioner awarded benefits to Plaintiff under Title XVI of the Act.  In spite of this, the ALJ made no attempt to infer onset date from the medical evidence already contained in the record.  See Kemp v. Weinberger, 522 F.2d 967, 1225 (9th Cir. 1988) (holding that evidence of treatment after the last insured date can be relevant for determining the onset date).  Rather, the ALJ simply concluded that the lack of medical records indicated that there was no impairment prior to December 31, 2002.

The ALJ's task in interpreting the later medical records was difficult.   None of the later medical examinations offer any opinion that Plaintiff was impaired prior to the expiration of his insured status.  Furthermore, the evidence in those records provide little

9

1    evidence that would permit the ALJ to reach such a finding.  The records of Plaintiff's treatment

2    occurring after December 31, 2002 are notable for their lack of any opinions about the source,

3    onset, or progression of Plaintiff's impairment.  The difficulty of inferring onset date from the

4    existing records should have led the ALJ to seek supplementation of the record from some

5    permissible source.

6           The inconclusive nature of Plaintiff's onset date is evident from the medical

7    findings made prior to the date Plaintiff was last insured.  Following his surgery in 1988, Plaintiff

8    continued to complain of pain.  AT 93-95.  However, the last medical entry for Plaintiff during

9    that period of treatment concluded that his condition was improving and predicted a return to

10   work.  AT 92.  This prediction came true as Plaintiff testified to working until 1997 as a tow

11   truck driver.  AT 155.

12          The medical evidence shows a 14-year gap in treatment for Plaintiff's back injury.

13   The ALJ relied heavily on this gap to conclude Plaintiff was not disabled prior to December 31,

14   2002.  According to the ALJ, had Plaintiff been disabled, he could have sought treatment in an

15   emergency room or low-cost clinic.  AT 16.  Consequently, as a result of that care, medical

16   records documenting Plaintiff's condition and level of impairment would have been available for

17   review.  However, the ALJ failed to properly evaluate the possibility that this lack of treatment

18   was because Plaintiff was without insurance and unable to pay for treatment during this time.

19   AT 150-51.

20          As discussed in detail below, the failure to receive treatment because of a lack of

21   an ability to pay for it is not a clear and convincing reason to discredit a Plaintiff's subjective

22   complaints.  Similarly, the absence of records because of Plaintiff's inability to afford treatment

23   can hardly be considered substantial evidence supporting the ALJ's finding that Plaintiff was not

24   disabled prior to December 31, 2002.  The inability to pay for treatment is simply not a relevant

25   factor in any analysis of Plaintiff's condition.  See Gamble v. Chater, 68 F.3d 319 (9th Cir.

26   1995)("'It flies in the face of the patent purposes of the Social Security Act to deny benefits to

10

1  someone because he is too poor to obtain medical treatment that may help him.'")(quoting

2  Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

3     The Commissioner has found Plaintiff disabled for purposes of benefits under

4  Title XVI of the Act.  However, the critical inquiry in this case is whether, for purposes of Title

5  II, that disability existed prior to December 31, 2002.  The record in this case is inconsistent on

6  that fact.  When the record is inconsistent as to onset date, further evaluation by medical experts

7  is required.  SSR 83-20.  Remand is necessary in order to permit the ALJ to acquire the evidence

8  necessary in order to determine the onset date of disability.

9     b. The ALJ's Rejection of Plaintiff's Subjective Complaints Was in Error.

10    The ALJ found no support in the record for Plaintiff's subjective complaints of

11 disabling pain.  AT 17.  The ALJ noted that Plaintiff failed to produce any evidence of medical

12 impairment prior to the date he was last insured for purposes of DIB under Title II.  In addition,

13 the ALJ described the extensive daily activities undertaken by Plaintiff that were inconsistent

14 with his subjective complaints.  The ALJ's finding was in error.

15    The ALJ determines whether a disability applicant is credible, and the court defers

16 to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

17 Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

18 an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

19 v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

20 supported by "a specific, cogent reason for the disbelief").

21    In evaluating whether subjective complaints are credible, the ALJ should first

22 consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

23 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

24 the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

25 medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

26 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ relied upon this lack of medical treatment to support his conclusion that Plaintiff's complaints should not have been credited.  According to the ALJ, had Plaintiff's impairment been as severe as alleged, treatment of some sort from a free or low-cost clinic, or through the emergency room, would have been expected.[4]  AT 16.  Plaintiff responded that the 15-year void in medical records was the result of a lack of insurance and a stoic willingness to simply deal with his impairments.  AT 150-51.

The failure to seek medical treatment can cast doubt upon a Plaintiff's subjective complaints.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1999).  However, the ALJ is not permitted to make such a finding when that failure is caused by a lack of insurance and an

---

[4]The Commissioner echoes this argument in her brief, stating that "regulations...provide that a lack of money is not an acceptable excuse when low or no-cost medical treatment is available."  (Pl.'s Reply 11).  However, Plaintiff does not identify the regulation nor does she provide a citation to any case, in this circuit or any other, that supports this statement.

1  inability to pay for treatment.  See Smolen, 80 F.3d at 1284 (proscribing rejection of [plaintiff's]

2  complaints for lack of treatment when the record clearly establishes plaintiff could not afford it).

3  Plaintiff provided a legitimate reason for his inability to seek medical treatment that the ALJ did

4  not refute.  See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1296-97

5  (9th Cir. 1999).  The ALJ's rejection of Plaintiff's testimony on this basis is improper.

6          The failure to seek treatment was a significant factor in the ALJ's rationale.

7  Given the fact that such a rationale is not permitted when uncontroverted evidence of an inability

8  to pay is offered, it can hardly be said that clear and convincing reasons exist to discredit

9  Plaintiff's credibility.  The ALJ's findings as they concern Plaintiff's credibility are not

10  supported by substantial evidence in the record.

11          In addition, the ALJ cited Plaintiff's active lifestyle as a reason to discredit his

12  complaints.  AT 14.  However, substantial evidence does not support the ALJ's conclusion in

13  this regard.  There is no indication in the ALJ's findings or the record that Plaintiff's daily

14  activities were sufficient to permit a finding that he could perform the skills necessary for work.

15          Plaintiff testified that he awoke daily at 5:30 a.m. to drive his wife to work.  AT

16  154.  Upon returning to the house, Plaintiff stated that he did household chores, including making

17  the bed, washing the dishes, cleaning the kitchen counters, straightening the living room, and

18  laundry every other day.  AT 154-55.  In the afternoon, Plaintiff picked up his wife.  AT 155.

19          Most significantly, Plaintiff testified that he and his wife have cared for their

20  grandchildren for 14 or 15 years.  AT 151.  This became Plaintiff's primary responsibility in

21  1997 when he quit work.  Id.  Included in this child-rearing duty was the requirement to do

22  household chores, id., drive the grandchildren to school and pick them up, AT 152, as well as

23  driving them to various appointments when required, AT 151.

24          Plaintiff's ability to engage in these daily activities does not compromise his

25  subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);

26  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  The ALJ simply recited Plaintiff's

13

1 activities, providing no explanation for how such activities were consistent with those necessary

2 for productive work.  See Morgan, 169 F.3d at 600.  The mere fact that Plaintiff can care for his

3 family does not preclude a finding of disability.  Fair, 885 F.2d at 603 (holding that one need not

4 be "utterly incapacitated" in order to be disabled).

5           Furthermore, the ALJ incorrectly characterizes Plaintiff's testimony as it concerns

6 his impairment.  The ALJ fails to describe any of the limitations Plaintiff experiences while

7 performing his daily activities, nor does he recognize that none of the activities performed by

8 Plaintiff involve lifting anything heavier than a dirty pan.  Plaintiff testified that his household

9 chores of making the bed, washing the dishes, straightening the couch cushions and pillows, and

10 doing laundry take the entire day and can only be done in short sessions with 15 to 20 minute

11 breaks in between.  AT 154-55.  Furthermore, Plaintiff stated that a significant number of

12 household chores were left to his grandchildren to perform when they returned, including

13 vacuuming and taking out the garbage.  AT 158.  While driving his wife and kids to work and

14 school, Plaintiff described the awkward position he was forced to take in the car seat in order to

15 minimize the discomfort to his back.  AT 158.

16           It is apparent that the ALJ's evaluation of Plaintiff's credibility was seriously

17 flawed.  In addition to utilizing an improper legal standard in his analysis of Plaintiff's failure to

18 seek medical treatment, the ALJ's conclusions about Plaintiff's daily activities were not

19 supported by substantial evidence in the record.  The finding by the ALJ that Plaintiff's

20 subjective complaints were not entirely credible is not supported by clear and convincing

21 evidence in the record

22           Remand to permit the ALJ to reevaluate Plaintiff credibility is not appropriate in

23 this case.  [W]here the ALJ improperly rejects the claimant's testimony regarding his limitations,

24 and the claimant would be disabled if his testimony were credited, "[the court] will not remand

25 solely to allow the ALJ to make specific findings regarding the testimony."  Varney v. Sec'y of

26 /////

1 <u>Health and Human Serves.</u>, 859 F.2d 1396, 1401 (9th Cir. 1988). The court credits that

2 testimony as a matter of law. <u>Id.</u>

3      As described above, remand is required to permit the ALJ to receive additional

4 evidence in order to pierce the confusion surrounding Plaintiff's onset date of disability. Upon

5 remand, the ALJ should receive evidence from expert medical or other sources to determine

6 whether Plaintiff was disabled prior to December 31, 2002, the date he was last insured for

7 purposes of the Act. A full and proper analysis of this additional testimony is required in order to

8 provide the substantial evidence necessary to support the ALJ's resulting conclusion.

9      If, upon proper analysis, the ALJ finds Plaintiff's onset date of disability to be

10 prior to December 31, 2002, benefits should be awarded. "The decision whether to remand the

11 case for additional evidence or simply to award benefits is within the discretion of the court."

12 <u>Stone v. Heckler</u>, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of

13 benefits "in cases where no useful purpose would be served by further administrative

14 proceedings or where the record has been thoroughly developed." <u>Varney</u>, 859 F.2d at 1399.

15 Plaintiff has already been found disabled for purposes of Title XVI. With his credited testimony,

16 there is nothing to indicate such a result would not occur under Title II.

17 /////
18 /////
19 /////
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

1        For the foregoing reasons, this matter will be remanded under sentence four of 42

2    U.S.C. § 405(g) for further development of the record and further findings addressing the

3    deficiencies noted above.

4            Accordingly, IT IS HEREBY ORDERED that:

5        1.  Plaintiff's motion for summary judgment is denied;

6        2.  The Commissioner's cross motion for summary judgment is denied; and

7        3.  This matter is remanded for further proceedings consistent with this order.

8    DATED:  September 7, 2006.

9

10                                    UNITED STATES MAGISTRATE JUDGE

11

12

13    13
      Alcanter.ss.wpd
14

15

16

17

18

19

20

21

22

23

24

25

26